The next case is People v. Randy J. Aderholt 516-0232 Council may proceed when you are ready. Are you with the Appellate Defender? Yes. Have you appeared here before? I have. This is my first time appearing in front of either of you two, but this is my first time. I didn't recognize you, so I just want to say welcome. May it please the Court. My name is Jordan Cohen. I represent Randy Aderholt. Mr. Aderholt was convicted of possession of methamphetamine, and there are three issues being raised today, but they all are generally around the same one topic, and that is the topic of the voluntariness of his possession. So the knowledge element is not in dispute, and kind of like the physical possession part, that's not in dispute either. It was all over his chest, wasn't it? There was some on his chest when he got up, yes. So that's not in dispute. I'm only disputing the voluntary portion. So the three issues, first is the jury. I'm not sure what you're disputing. The voluntary of what? The voluntary possession of the methamphetamine. So the state at trial kind of. Under the jury instruction, whether it was a voluntary act? Yes. Okay. What was the refused jury instruction? Yes. So that's the first issue, which is going to be the one that I'm going to focus on today, is the jury instruction that he requested and that was refused. And the second issue is the sufficiency of the evidence that the state did not prove his case beyond a reasonable doubt. And the third issue is remarks made by the state at closing arguments that improperly shifted the burden of proof to the defense. If I don't make it to that third issue, I would just rely on my arguments from the brief regarding that. But I'm going to focus more on the jury instruction issue. So this jury instruction, it was one of his refusers objected to both at trial and in a post-trial motion. So this is reviewed by a harmless error standard. And so there's two prongs to the harmless error analysis. The first is just whether an error occurred. Harmless error or plain error? This is harmless error because it was objected to. Oh, it was objected to. Yeah, it was objected to at trial and in a post-trial motion. My third issue is plain error, but this one's harmless error. So the two prongs are first is whether an error occurred, so whether the instruction should have been given to the jury. And the second issue is whether, in spite of that error, the evidence of the defense goes so clear and convincing as to whether they are harmless beyond a reasonable doubt. And my argument for that is going to overlap a lot with the second issue of sufficiency of the evidence just because they both have to do with the facts. But there's a huge difference just in the standard that's used. So, of course, the state gets the benefit of the doubt on the sufficiency issue because it's just as long as any rational, true fact can find that he was guilty, then we would uphold the judgment. But for the harmless error prong, the state does not get the benefit of the doubt because the evidence had to be so clear and convincing that he was proven guilty beyond a reasonable doubt. So I'm going to start just by reading the instruction, and then I'm going to go into the facts and then go into the legal argument. So the instruction that was requested was IPAD 4.15, and it was the exact same language as the statute. So it just says, Possession is a voluntary act if the person knowingly procured or received the thing possessed or was aware of his control of the thing for sufficient time to have been able to terminate his possession. So basically, if it was his meth. And I think it's very rare that voluntariness would be an issue in possession, and so there's committee notes on this instruction that say this instruction should only be given if voluntariness is an issue. But in this case, it is. So now I want to talk about the facts. Do you distinguish between voluntary possession and actual possession? I believe voluntariness is a portion of actual possession. Like, if by actual possession you mean what would be needed for him to be found guilty, I think there does need to be voluntariness. And one thing I would kind of just pose the counterfactual. Like, if someone involuntarily possessed a drug, I don't think they would be found guilty of possession. Like, if it just happened. There's a case that I cited, People v. Larry, where there was a gun found, like, under the car mat, but someone was just driving, so it was a borrowed car. So in that instance, it was the same exact jury instruction that was given, and it was refused for the same reason that the instruction would confuse the jury. But that case was reversed because they didn't know whether that gun was voluntarily possessed or not. And so I think it is an essential element that does need to be proven. Well, what's the difference between voluntary and knowledge? So, Your Honor, at least in this case, I think knowledge would be whether the substance was methamphetamine or whether he knew that it was present. Whereas, voluntariness is whether he wanted, like, he chose to have the meth on him. So it's kind of like whether he knew it was there. Like, we're not making the argument that he didn't know this substance was methamphetamine. That's not the argument. The argument is just that he did not voluntarily possess it. And so that might sound strange. That's why I want to talk about the past for a second. So, for example, if he fell into a bin of it, he wouldn't have voluntarily possessed it. Correct. And that's actually exactly what counsel said when you asked for this instruction, was that if he involuntarily laid on the ground and there was a bag of meth there, then that's not possession. There has to be some showing of, like, where this meth came from that it belonged to him at some point. So, Mr. Adderall, that's when I started seeing this. It's like a hot, sunny day in the middle of July. Mr. Adderall is in his friend's car. They drive to a bank and they get pulled over, and he gets out of the car, not realizing they got pulled over, but just because he was going to the ATM. And it's hot, so Mr. Adderall is shirtless. He's only wearing a pair of black shorts. There are three police officers that all come from different ways, so they have different vantage points around him. And so they tell him to put his hands up, and he puts his hands up, and all of the police officers testified they don't see anything in his hands. And he's only wearing shorts, and they don't see anything in his hands. And also none of their dash cams were working. And then one of them goes up and handcuffs him, his arms behind his back, and they still don't see any meth on him. So it's not until after, then they tell him to lay down on the ground. He lays down on the ground. Nobody sees anything. It's not until after he gets up that all of a sudden there's meth on the ground, and some of it is on his body. And that's basically what the state says, well, there's meth on his body. That's possession. How close was he to the car when he laid down? Your Honor, that's a little bit of a conflict, because according to Mr. Adderholtz, he was told to take several steps back and to move around, and that he was far away from the car. I think according to the police officers, they – it's not quite – it kind of depends who you ask. But there was a good amount of interaction before he went down to the ground, no matter what happened, because he was handcuffed first. But is the state's theory that he could have fallen out of the car? Your Honor, to be honest, I'm not sure what the state's theory is, because the assent of their case was – I mean, it's basically just saying it's on him, and that's possession. They didn't really argue the voluntary part. I mean, my inference of their position would be that he somehow, like, contorted his body and was able to somehow get a hidden bag of meth out from his shorts somehow and open it up, and somehow he did this without anybody seeing him, even though he's standing in the middle of everyone. But he – but the testimony of the officers is such that if he's close enough to the car, then the opening of the car door, for example, if there was meth in the car door, could have – the bag could have fallen onto the ground. But then you would still claim that that wasn't a voluntary possession, because he wouldn't have known about that. Yes, Your Honor. And I believe – I don't want to get bogged down in exactly what happened. I think there's several explanations for where the meth could have come from. Well, I think it's really important to figure out the facts, because there's case law that says we can infer the knowledge. We can infer actual possession if the individual exercises immediate control over the substance. Right? Yes, Your Honor. But at least to that theory, I would say it wasn't Mr. Adderall's car. So if it's in the car and then it drops out, that doesn't necessarily – Well, it clearly wasn't in the car. It was on the ground. Well, if you're saying that it drops from the car – Well, I'm – that was hypothetical, but – Yes. But we – assuming you don't know where it came from, can we infer as a matter of law that if Mr. Adderall had exclusive possession and immediate control over the substance, nobody else had it, can we infer as a matter of law actual possession? Your Honor, if we knew that, like if we knew the meth was on him – it was his meth in the car, and then when he got out of the car it fell – No, no. He gets up and there's nobody else around, right? Nobody's got – nobody threw a bag underneath him. But he gets up, it's on him. Is there a way at all – I don't know – can the law infer actual possession because the individual has exclusive, immediate dominion or control over the illicit material? Your Honor, under – Go ahead. Under that exact hypothetical, I would say yes, but I would disagree that there's nobody else there because there's the driver of the car, Stacy Phillips, which the jury asked a question about of why didn't Stacy Phillips testify, and I think it's entirely plausible that the bag did belong to Stacy Phillips and that he easily could have tossed it while everybody was looking at Mr. Adderall, especially since the police did search the car afterwards. I think it's very reasonable that that could have happened, and I'll also get into more of this in a moment, but that's my answer. Thanks. Thank you. This is one part new. May it please the Court, Counsel, my name is Max Miller and I represent the people of the State of Illinois. The defendant was convicted following a jury trial and raised three issues on appeal. The defendant challenges the trial court's refusal of jury instruction. They challenge the sufficiency of the evidence regarding the knowing possession of the methamphetamine, and the defendant challenges closing remarks made by the State. As to the first issue, the trial court's denial of the defendant's proposed jury instruction on possession as voluntary act was appropriate because the instructions completely and fairly explained the law without it, and its introduction would have confused the jury. Now, in the defendant's opening brief and in our answer brief, we view the standard of review as de novo. The question is whether the trial court's decision was correct as a matter of law, not whether the reviewing court would have made the same decision. The Illinois Criminal Code states that the offense of methamphetamine possession consists of a person knowingly possessing methamphetamine or a substance containing methamphetamine, and the trial court instructed the jury to that effect. But as Justice Overstreet was indicating earlier, this whole element of knowledge is something that the State has to prove beyond a reasonable doubt. It's an element of the offense. Absolutely, Your Honor. So I was using the term actual possession or actual not. Actual possession, does that equate with knowledge? What do you think? I would say the two have to be separate, considering that they're separate elements of the offense. Okay. So then where in this case do we find knowledge? So the element of knowledge, as I put it in the case, is rarely susceptible to direct proof, but it is established by circumstantial evidence. Okay, so what's the circumstantial evidence in this case? So often we look at Officer Masterson's testimony. He testified that the defendant immediately exited the vehicle upon being pulled over. So he exits the vehicle, he approached the officer, and we have to view Officer Masterson's testimony. Okay, so he was told to do that. He followed orders. No, he exited the vehicle before any commands were issued. He pulled over the car, he gets out, he charges Officer Masterson. Did anybody see a bag? Not at that time, Your Honor. The guy's wearing a shirt. Did Masterson say he didn't put his hands in his pocket? Masterson absolutely said so. He orders the defendant to stop, and he says the defendant takes his hands and, excuse me, he says the defendant first complied with the instructions, but the defendant dropped his hands, spun around, and moved his hands to the front of his body. And so that's one of the possible inferences that the defendant was shirtless, so presumably he was maneuvering something that was on his person. That's certainly a reasonable inference. The defendant was ordered to the ground, but instead of immediately laying on the ground, the defendant turns away from Officer Masterson and lays down, facing away from the officer, which is unusual in Officer Masterson's testimony. He says people normally drop immediately as they're standing, so it's unusual that he would maneuver out of his way and then lay down. So it's another possible inference that he was doing something, he was perhaps hiding it, perhaps brandishing a weapon. That's why at that time Officer Masterson did draw his weapon. Now, the second officer … It appears to me there was no motion to suppress Fylde in this case. Did you see that? Was there ever a motion to suppress Fylde in this case? I don't recall that specific procedural fact at this time, Your Honor. But the second officer approaches, and he testified that the defendant kept moving his hands, and this officer testifies that is why the defendant is initially handcuffed. So the officer's testimony is that the defendant is on the ground, not handcuffed, but he keeps moving, and then they handcuff him. When they lift him up after the search for weapons, that's when they find the baggy on the ground with the powder, and the powder over his stomach. And so it's from that that we believe a reasonable jury could infer that the baggy was on the person of the defendant and that it spilled in that maneuvering and that he had been trying to conceal it. So we believe that gives the sufficiency of the evidence argument. With regards to the jury instruction, the State believes that this was not an error because, again, that this would have confused the jury, especially with the issue of knowing versus voluntariness, because the defendant's main theory of this case was not that it was involuntary possession. It was that there was no possession at all. The defendant brings up an imposing argument. He denies that it's confirmed that the substance was, in fact, methamphetamine. He says, we don't know that that powder was the same one. He questions the lack of presence of gravel in the substance. The jury had the opportunity to hear that. They heard from the forensic scientist who tested the methamphetamine. She was recognized as an expert by the court, and they plainly credited the expert. And so that, we believe, was proved beyond, excuse me, that there was sufficient evidence. Finally, the defendant argued that the State's closing remarks shifted the burden of proof. The statement is that they never argued that the defendant failed to explain the lack of presence of methamphetamine. The defendant testified, and the State presented its side. One of the State's points was to look at this reasonably. The defendant is on the ground. He gets up. They find methamphetamine. And the State was merely pointing out, was it more likely that that methamphetamine was on the defendant or that it was lying in that exact spot, unnoticed by everyone involved, until they moved the defendant. And the State is pointing out that that was extremely unlikely. And so this could not place a burden on the defendant because the defendant's argument was, again, not that he possessed it, but he possessed it involuntarily. They said that there was no possession at all. That was the main theory of this case. The defendant cites People vs. Fluker, where the State pointed out the defendant hadn't provided an alternative theory of corroborating witness, and so that shifted the burden. Clearly, that wasn't the case here. The State did not say, look, the defendant has no explanation for this. The State was saying there is no explanation for this, and the State didn't even bring alternative witnesses into consideration. But even had the comment been made in air, we believe that the testimonies of police officers against the testimony of the defendant, which was both inconsistent with itself. I can cite an example. When the defendant was first noticed by Officer Masterson, it was at a gas station before he got into a vehicle, and he was waving his arms around, and they asked him what that was for. And first he says, well, I was saying goodbye to a friend. Then he's asked again. He says, well, I was trying to get somebody's attention. And the point is, when Officer Masterson testified, you have an example of consistent testimony against sort of inconsistent testimony. And then the defendant's version of the events, which are that Officer Masterson approached him after he was out of the vehicle. Officer Masterson saw the defendant, ordered him into the vehicle, ordered him back out of the vehicle, and then ordered him on the ground. Well, when the juror is presented with these two stories, that doesn't make much sense. And so they finally believe the police officer. And if there are no questions, then the State would request the adjournment. Okay. Thank you, counsel. We're both. Make these work. Make these work. So they are different. We don't know what happened, where the method comes from. There's different explanations that you could believe. You might think some are more likely than others. I want to talk about one. When counsel asks for the defense instruction, it is the court's role to determine whether there is some evidence, even very slight evidence, supporting a certain theory. It's not the court's role to weigh that evidence and to say this is more plausible than this or the officers are more credible than the defendant. If there is some evidence to support a theory, that is a question for the jury to decide. Not if there's adequate instructions of law already, at least as to your refused jury instruction. If the jury is already being adequately instructed on the law, then the court has the discretion to refuse an instruction. Correct? Yes, Your Honor. But I would argue that the jury was not instructed with voluntariness. Because it was not instructed, opposing counsel pointed out that defense counsel did not talk about this in the closing argument. That's because this instruction was denied before the closing argument. So Mr. Edel could not raise this theory of the case. Why not? Well, because the jury was not going to be instructed. But that doesn't mean he couldn't have argued it. He could have argued it. The instruction says that if a person knowingly procured or received the thing or was aware of its control, this gentleman should have, could have, and probably would have argued all day long that he didn't know it was there. What does he need an instruction for if the other instructions include that? Your Honor, he needs the instruction because without the instruction, the jury can think that the presence of the methamphetamine on his body is sufficient to find him guilty just by that. The instruction is what... No, there were other instructions as to the elements of the possession. Right? He had to know it. I mean, that's one of the elements is what Justice Overstreet was talking about earlier. He had to have knowledge. Yes, Your Honor. Which is why this other instruction almost becomes superfluous. If you're talking about knowledge, then voluntary act may confuse the jury. You're right. But you may have a point on the other argument that you've raised as to sufficiency of the evidence. Like where did it come from? Yes, exactly. To that point, I would say zero out of three dash cams were operating. Zero out of three officers saw anything in his hands. He has nowhere to hide it. He's shirtless. His hands are cuffed. So the state mentions it might be implausible that the meth came from anywhere but him. But I would argue it's impossible that it came from him and nobody could see it. And how is he getting it out? I mean, is it enough? I mean, thinking about your argument, a jury is going to believe it had to come from him if it's on him, right? He gets up off the hot asphalt and he's got meth all over him. Well, where else is it going to come from, right? Your Honor, like I said, I think it's perfectly reasonable that it could have come from the driver of the car who has a whole car to store his meth instead of just a pair of shorts. Do you think a jury is going to think that? I believe a jury could have thought. Well, I truly believe there's a big difference. Here's my question. Yes. A guy, a gentleman like your client gets up. He's got it all over him. A jury naturally would think, well, it's his. The question I have is they still have to prove knowledge. How do they do that? How does the state meet its burden of knowledge? Your Honor, the state could have proved this if any of their dash cams were working, if any of the officers saw anything in his hands, if basically they had any evidence of work. If they questioned Stacey Phillips and had him as a witness, which they did not, which the jury asked about and so clearly the jury wanted more information about. So there's, I mean. So they could have done it, but they didn't. That's your argument. Yes, they could have done it if that was true. I also think it might not be true that it was his after all. No, but I'm saying the way for them to prove knowledge would have been to do all these things. Yes. And they didn't do it. Correct. And I also just want to point out that when defense counsel made a motion for directed verdict, the court said I believe there's sufficient facts for the jury to convict or to acquit. So the trial court itself basically was like this case can go either way. There's facts in both directions. So especially when the harmless error standard comes, I just want to point out that I'm going to request either an outright reversal of his conviction, which is if you believe the sufficiency of the evidence issue that he wins on that, or if he wins on the other issue, I would ask for a remand to the trial level for a new trial. All right. Thank you, counsel. I appreciate the arguments. The court takes the matter under advisement and render a decision in due course.